FLOYD HARBER, TAXPAYER v. RABIE RHODES ET AL

5-5289                                     455 S. W. 2d 926

Opinion delivered June 29, 1970
[Rehearing denied August 3, 1970.]

*Lee Ward,* for appellant.

*Don Langston, Graham Sudbury* and *John Watkins,* for appellees.

LYLE BROWN, Justice. Appellant Floyd Harber initiated this action in his capacity as a taxpayer and patron of Gosnell School District, Mississippi County. He sought a writ of mandamus directed to appellees as chairman and secretary of the State Board of Education to require that a hearing be conducted to resolve a complaint filed by Harber with the Board and against J. W. Rea, Superintendent of Gosnell Schools. The chancellor rejected a demurrer to the pleading, heard the case on its merits, and ruled that the State Board had performed its duty by acting on the complaint against Rea. Since it is our view that the demurrer should have been sustained we shall not enumerate appellant's points for reversal because they are concerned with the merits of the case.

In June 1969, appellant filed with the State Board in affidavit form his charges against Superintendent Rea. The affidavit alleged that appellant was employed for the school year 1968-69 as principal of the junior high school; that at the outset of the school year he was called in by Rea and instructed to show on appellant's attendance reports an average daily attendance in the upper 90% range; that when pressed for assurance of cooperation appellant "stalled for time"; that pursuant to his final decision not to participate in the padding of attendance rolls appellant made a full disclosure to the school board; and that the local board supported the superintendant in the plan and discharged appellant for failure to follow orders. Appellant's affidavit further alleged that the superintendent had, during

the current school year, used a system whereby he added to the final attendance reports a number of absentees and certified them as actually being in school. In corroboration of his charges he filed two written statements from former employees of Gosnell District. In those statements the respective employees stated that under pressure from the superintendent they had in previous years falsified attendance records. Appellant asked that the superintendent's teaching certificate be revoked, which is the statutory penalty for permitting or requiring any teacher to falsify attendance records. Ark. Stat. Ann. § 80-1228 (Repl. 1960).

Appellee A. W. Ford is, and was, the State Commissioner of Education and ex-officio Secretary of the State Board of Education. Upon receipt of the described charges, along with a request from appellant's attorney for a hearing, Mr. Ford appointed a committee from his staff to make an investigation. Based on the committee interviews with school employees at Gosnell and inspection of attendance records the committee filed an extensive report. Its findings need not here be detailed, except to say that "non-conforming practices" were found with respect to reporting daily attendance.

The matter was presented to the State Board at the regular quarterly meeting in September 1969. The record available to the board was the affidavit of appellant, two statements supporting his position, and a detailed report of the investigating committee. The State Board was also informed that the committee "did not find substantial evidence of an attempt to falsify the records." The board concluded there was no basis for a public evidentiary hearing as requested by appellant. Counsel for appellant was immediately notified of the decision of the board and the petition for mandamus was shortly filed.

Appellant relies on the provisions of the Arkansas Administrative Procedure Act which he asserts affords him a right to a formal and evidentiary public hearing before the State Board. The cited Act is found in Ark.

Stat. Ann. §§ 5-701-714 (Supp. 1969). It has two purposes, (1) to require certain designated State agencies to adopt and publish procedural rules, including methods whereby the public can make submissions or requests; and (2) to afford adjudication rights in matters over which the agencies have jurisdiction. "Adjudication" is defined as "agency process for the formulation of an order."

Authority for the procedure followed by appellant is recited in Ark. Stat. Ann. § 5-707, which is a part of our administrative procedure act:

> Agency failing to act.—Suit in court.—In any case of rule making or adjudication, if an agency shall unlawfully, unreasonably, or capriciously fail, refuse, or delay to act, any person who considers himself injured in his person, business, or property by such failure, refusal, or delay may bring suit in the Chancery Court of any county in which he resides or does business, or in the Chancery Court of Pulaski County, for an order commanding the agency to act.

Appellees demurred to the jurisdiction of the chancery court over the subject matter of the action, the subject of course being whether a writ of mandamus should issue. The demurrer was overruled. On appeal, appellees cite as authority for their contention of lack of jurisdiction our recent case of *Nethercutt and Payne* v. *Pulaski County Special School District*, 248 Ark. 143, 450 S. W. 2d 777. It was there held that Ark. Stat. Ann. § 33-101 (Repl. 1962) was unconstitutional insofar as it purported to vest in chancery courts the power to hear and determine a petition for writ of mandamus.

The portion of § 5-707 which authorizes the chancery court to entertain a petition for writ of mandamus must fall for the reasons stated in *Nethercutt and Payne*. The designation of the forum is clearly severable from the other provisions of the section and therefore

the remainder of the section is not affected by our holding.

Had the trial court sustained the demurrer it would have then been appropriate to have transferred the case to law. That is because appellant responded to the demurrer by conceding its apparent merit and specifically praying that the cause be so transferred.

Appellees argue here, as they did below, that appellant did not possess the legal capacity to sue. We hold that the broad provisions of § 5-707 give him the right to bring the suit. It provides that any person might bring suit to compel action if he "considers himself injured in his person, business, or property" by the failure or delay of the agency to act on his complaint. According to his petition and supporting affidavits, appellant was a taxpayer, resident, and patron of Gosnell School District; the school superintendent was exacting an illegal requirement that teachers responsible for average daily attendance records falsify those reports; and the refusal of appellant to cooperate had resulted in the loss of his position. We of course make no finding as to the truth of the allegations; however, assuming their truth for the purposes of the demurrer, such a practice could jeopardize the careers of the faculty, imprint a black mark on the community and the school system, and result in misappropriation of school funds. (Average daily attendance is related to both federal and state aid.) Additionally, appellant had been injured in his vested right to follow his profession, allegedly because he failed to follow the illegal practice. Because of the reasonable possibilities we have enumerated we think any citizen, taxpayer, and patron would rightfully deem it to his best interest, as well as to the community collectively, that the practice be exposed in order to avert the inevitable.

The cause is remanded with direction that the motion to transfer to law be granted.

FOGLEMAN, J., dissents in part.

JOHN A. FOGLEMAN, Justice, dissenting. I must dissent to that part of the court's decision holding that appellant has standing to pursue the particular remedy he seeks, because the remand of the case depends on this factor.

In order to see this matter in proper perspective, it must be kept in mind that petitioner seeks to require the State Board of Education to revoke J. W. Rea's teacher's certificate. This is the only relief he is seeking. In this proceeding he does not seek damages for wrongful discharge or a hearing to reverse that action, if indeed he could. However desirable it may be that Rea's guilt or innocence of the reprehensible conduct with which he is charged be determined, I simply do not see how it can be said that Harber is injured in his person, business, or property by the board's failure to act in the premises. Furthermore, I do not see how Harber can get any relief if Rea's certificate is revoked, except for any satisfaction that he might feel from vengeance or from seeing right triumph. In passing, I would add that I do not see how Harber has established standing to assert an illegal exaction because of the failure of the board to conduct a hearing to determine whether Rea's teaching license be revoked. No tax funds are being illegally used or applied until such time as it has been determined that he is not qualified to hold his position. Until then he is holding it legally.